# NO. 24-485

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

KEZIAH THAYER, ELAM THAYER, and MARTHA THAYER,

*Plaintiffs-Appellants*,

- against -

VERMONT DEPARTMENT FOR CHILDREN AND FAMILIES ("DCF"), LAURA KNOWLES, SUPERVISOR, DCF; KAREN SHEA, FORMER DEPUTY COMMISSIONER FOR THE DCF FAMILY SERVICES DIVISION ("FSD"); MONICA BROWN, DCF CASE WORKER; CHRISTOPHER CONWAY, DCF

(*For Continuation of Caption See Inside Cover*)

*On Appeal from a Decision of the*
*United States District Court for the District of Vermont*

## BRIEF OF APPELLANTS

Colin R. Hagan
Shlansky Law Group, LLP
1 Winnisimmet Street
Chelsea, MA 02150
Phone: (617) 497-7200
Fax: (866) 257-9530
E-mail:
Colin.Hagan@slglawfirm.com
*Attorney for Plaintiffs-Appellants*

CASE WORKER; JENNIFER BURKEY, DCF DISTRICT DIRECTOR, each in their individual capacities; KENNETH SCHATZ, COMMISSIONER, DCF; CHRISTINE JOHNSON, DEPUTY COMMISSIONER FOR FSD, DCF, each in their individual and official capacities, JOHN W. DONNELLY, individually; JOHN W. DONNELLY, Ph.D., PLLC; LUND FAMILY CENTER, INC.; VERMONT SUPREME COURT; and VERMONT CHIEF SUPERIOR JUDGE, in their official capacities,

*Defendants-Appellees.*

_____

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................iv

PRELIMINARY STATEMENT ............................................................1

JURISDICTIONAL STATEMENT .......................................................4

STATEMENT OF THE ISSUES............................................................5

STATEMENT OF THE CASE AND FACTS ..........................................6

    A.    Course of Proceedings and Disposition Below ..........................6

    B.    Nature of the Case ....................................................................8

SUMMARY OF ARGUMENT .............................................................12

STANDARD OF REVIEW ..................................................................12

ARGUMENT .......................................................................................13

    I.    THE DISTRICT COURT ERRED IN APPLYING *ROOKER-FELDMAN*.............................................................................13

        A. Ms. Thayer's Claims Were Not Caused by Orders of the Lower Court. ..................................................................14

        B. Ms. Thayer Does Not Seek to Overturn the State Court Judgment....19

        C. The Issues Raised by Ms. Thayer Never Addressed by the Lower Court .................................................................22

        D. The Fraud Exception Applies...............................................23

    II.    THE DISTRICT COURT ERRED IN DISMISSING MS. THAYER'S ADA AND REHABILITATION ACT CLAIM ......................................28

i

III.    THE DISTRICT COURT ERRED IN DISMISSING MS. THAYER'S
        CLAIM FOR WRONGFUL INTERFERENCE WITH CUSTODY AS
        TO THE DONNELLY DEFENDANTS .................................................28

IV.     THE DISTRICT COURT ERRED IN GRANTING SUMMARY
        JUDGMENT AS TO THE GRANDPARENTS' CLAIMS....................30

        A. The District Court Erred in Finding that No Due Process Violation
           Occurred .............................................................................................30

        B. The District Court Erred in Dismissing Grandparents' IIED Claim...33

V.      THE DISTRICT COURT ERRED IN APPLYING *YOUNGER* TO MS.
        THAYER'S ICWA CLAIM AND REFUSING TO PERMIT LEAVE TO
        AMEND ON THE BASIS........................................................................34

CONCLUSION .........................................................................................................35

CERTIFICATE OF COMPLIANCE

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>:** **<u>Page(s)</u>**

*Adkins v. Rumsfeld*, 464 F.3d 456 (4th Cir. 2006).............................................. 18, 19

*Allen v. DeBello*, 861 F.3d 433 (3d Cir. 2017) .........................................................21

*Almazon v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 19-CV-4871 (VEC), 2020
WL 1151313 (S.D.N.Y. Mar. 9, 2020) ......................................................................27

*B.S. v. Somerset County*, 704 F.3d 250 (3d Cir. 2013) .............................................21

*Beam v. Bellows Falls Vermont Vill. Corp.*, No. 2:20-CV-46, 2021 WL 1118061
(D. Vt. Mar. 24, 2021) ...............................................................................................26

*Bolden v. City of Topeka, Kan.*, 441 F.3d 1129 (10th Cir. 2006)............................14

*Burlington Ins. Co. v. NYC Transit Auth.*, 29 N.Y.3d 313 (N.Y. 2017)..................17

*Chandler v. Carroll*, No. 1:09-CV-58, 2009 WL 1181294
(D. Vt. Apr. 30, 2009).................................................................................................34

*Charles v. Levitt*, 716 F. App'x 18 (2d Cir. 2017)....................................................19

*Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191 (2d Cir. 2002) ..............13

*Dorce v. City of New York*, 2 F.4th 82 (2d Cir. 2021) ....................................... 17, 25

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)............ 13, 14

*Faulkner v. Beer*, 463 F.3d 130 (2d Cir. 2006) ........................................................13

*Gifford v. United N. Mortg. Bankers, Ltd.*, No. 18CIV6324PAEHBP, 2019 WL
2912489 (S.D.N.Y. July 8, 2019) ..............................................................................28

*Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159
(3d Cir. 2010).............................................................................................................24

iv

*Guest v. Allegheny Cty.*, No. CV 20-130, 2020 WL 4041550
(W.D. Pa. July 17, 2020)............................................................24

*Hansel v. Town Court for Town of Springfield, N.Y.*, 56 F.3d 391
(2d Cir. 1995)................................................................... 34, 35

*Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005)...... 12, 14, 17

*Hunter v. MacMahon*, No. 21-1473 (2d Cir. July 21, 2023) ...................................35

*In re B.S.*, 166 Vt. 345 (1997).............................................................22

*In re Buckskin Realty Inc.,* No. 1-13-40083-nhl, 2016 WL 5360750 (Bankr.
E.D.N.Y. Sept. 23, 2016) .................................................... 25, 26

*In re Lampe*, 665 F.3d 506 (3d Cir. 2011) .............................................14

*In re Lehman Bros. Holdings Inc.*, 855 F.3d 459 (2d Cir. 2017) ...........................17

*In re Philadelphia Entertainment & Development Partners,* 879 F.3d 492
(3d Cir. 2018).............................................................................23

*Joseph v. Leavitt*, 465 F.3d 87 (2d Cir. 2006) ........................................12

*Leslie v. City of New York*, No. 22 CIV. 2305 (NRB), 2023 WL 2612688
(S.D.N.Y. Mar. 23, 2023) ..........................................................30

*Limtung v. Thomas*, No. 19CV3646RPKMMH, 2021 WL 4443710, at *5
(E.D.N.Y. Sept. 28, 2021)................................................... 25, 26

*Loubser v. Thacker*, 440 F.3d 439 (7th Cir. 2006) ..................................25

*Macias v. Ocwen Loan Servicing, LLC*, 718 F. App'x 32 (2d Cir. 2017)..............35

*Mortimer v. Wilson*, No. 15 CIV. 7186 (KPF), 2020 WL 3791892
(S.D.N.Y. July 7, 2020) ........................................... 15, 19, 20

*Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995) ....................................24

*Padula-Wilson v. Landry*, 298 Va. 565 (2020)................................... 24, 29

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326 (2d Cir. 2000) ........................13

*Patane v. Nestle Waters N. Am., Inc.*, 314 F. Supp. 3d 37 (D. Conn. 2018) ..........22

*Pennicott v. JPMorgan Chase Bank*, N.A., No. 16 CV 3044 (VB), 2018 WL 1891312 (S.D.N.Y. Apr. 18, 2018)..................................................................28

*Reliability Inc. v. Doki*, No. 20 CIV 7109 (KPF), 2021 WL 3408589 (S.D.N.Y. Aug. 4, 2021) .................................................................. 18, 27

*Schuppin v. Unification Church*, 435 F. Supp. 603 (D. Vt.), *aff'd*, 573 F.2d 1295 (2d Cir. 1977)..................................................................29

*Skinner v. Switzer*, 131 S. Ct. 1289 (2011) .............................................................23

*Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 705 (2d Cir. 2015).....................21

*United States v. Morgan*, 51 F.3d 1105 (2d Cir.), *cert. denied*, 116 S. Ct. 171 (1995) ..................................................................16

*United States v. Rom*, No. 2:10-CR-146, 2011 WL 5239224 (D. Vt. Nov. 1, 2011) ..................................................................16

*Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423 (2d Cir. 2014)..........15

*W.J.F. Realty Corp. v. Town of Southampton*, 220 F. Supp. 2d 140 (E.D.N.Y. 2002)..................................................................22

*Wausau Underwriters Ins. Co. v. Old Republic Gen. Ins. Co*., 122 F. Supp. 3d 44 (S.D.N.Y. 2015) ..................................................................17

*Webb as next friend of K. S. v. Smith*, 936 F.3d 808 (8th Cir. 2019).....................20

*WGH Commc'ns, Inc. v. Penachio Malara LLP*, No. 21-570-CV, 2022 WL 569665 (2d Cir. Feb. 25, 2022) ..................................................................13

**Statutes**

28 U.S.C. § 1291 ..................................................................4

28 U.S.C. § 1331 ..................................................................4

42 U.S.C. § 1983 .................................................................. 2, 5, 16, 20

vi

## **PRELIMINARY STATEMENT**

Plaintiff-Appellant Keziah Thayer (pseudonym) is the mother of three minor children, whom she has alleged were taken from her in violation of her constitutional and statutory rights. Plaintiff-Appellants Elam Thayer and Martha Thayer (pseudonyms, referred to herein as "Grandparents") are the biological parents of Ms. Thayer, and biological grandparents of Ms. Thayer's three children.[1] Elam Thayer and Martha Thayer have also alleged that they were deprived of any relationship with their three grandchildren due to the deliberate actions of the Defendants-Appellees.[2]

Constitutional law does not allow for severing families more than temporarily absent a showing by clear and convincing evidence of parental unfitness. Yet, Ms. Thayer's children were taken from her *even after* Vermont Department for Children and Families' ("DCF") acknowledged, as represented on the relevant docket sheets, that Ms. Thayer was not abusing her children. There was no abuse, showing of parental unfitness, or other evidence to support the

---

[1] All pseudonyms identified herein were used with permission of the District Court.

[2] The claims as to Ms. Thayer were dismissed at the pleading stage, and the claims as to Grandparents were dismissed at the summary judgment stage.

1

assertion that her children should be without their mother. In fact, Ms. Thayer's three children wrote to her often, telling her that they missed her, wanted to be with her, and that she was the greatest mother. App. 152 ¶ 161. Nevertheless, Defendants-Appellees ignored Ms. Thayer's minor disabilities and lack of resources and spent months conditioning her to accept DCF's intervention without question. This conditioning put Ms. Thayer in a position to be coerced or misled into believing that a "voluntary relinquishment of parental rights" was the only way for her ever to see her children again. App. 108 ¶ 9. Ms. Thayer was a victim of a "Catch-22 system" through which Defendants-Appellees purported to require her to satisfy subjective and amorphous "goals" and faulted her for failing to attain them, despite her disabilities and lack of resources.

This 42 U.S.C. § 1983 action seeks damages and injunctive relief and challenges DCF's improper and unconstitutional procedures and actions in connection with their destruction of Ms. Thayer's parental rights, and specifically, DCF's failure to comply with state and federal law, which has resulted in violations of Plaintiffs-Appellants' due process rights under the United States and Vermont Constitutions and under Vermont law. The claims concern whether Defendants-Appellees have, among under unlawful conduct, deprived Plaintiffs-Appellants of their liberty and property interests, including Ms. Thayer's interest in the care, custody, and control of her children, without due process of law. While

2

the underlying case in the Vermont Superior Court, Family Division, ultimately

entered judgment terminating Ms. Thayer's parental rights, Ms. Thayer does not

seek damages based on that judgment, nor does she seek to overturn that judgment.

Rather, Ms. Thayer seeks damages based on the conduct of Defendants-Appellants

during the course of that underlying action, as do Grandparents. The District

Court's Decisions and Orders should be reversed, and this case should be

remanded because:

- The District Court improperly applied the *Rooker-Feldman* doctrine, which was the basis for the dismissal of nearly all of Ms. Thayer's claims. *Rooker-Feldman* is inapplicable here because it does not apply to complaints about an injury not "caused by" a state court judgment and which do not seek to overturn a state court judgment. Ms. Thayer has pleaded independent claims that were not "caused" by orders of the lower court which seek to redress Defendants-Appellants' conduct during the course of the lower court action, which injuries pre-date the judgment. Nor does Ms. Thayer seek to overturn the lower court judgment. *Rooker-Feldman* is also inapplicable because the issues raised by Ms. Thayer were never addressed in the prior proceeding. Even if *Rooker-Feldman* applied (it does not), the fraud exception is applicable in light of the allegations, but the District Court rejected that such an exception applied.

- The District Court erred in dismissing Ms. Thayer's Americans with Disabilities Act ("ADA") and Rehabilitation Act Claims without any analysis under the *Rooker-Feldman* doctrine. The District Court dismissed these claims without any analysis as to how *Rooker-Feldman* applied to them. Since *Rooker-Feldman* requires an independent analysis as to each claim, this alone requires that the decision dismissing these claims be vacated and remanded.

- The District Court erred in dismissing Plaintiffs-Appellants' claim for wrongful interference with custody as to John W. Donnelly and John W.

3

Donnelly, Ph.D., PLLC (the "Donnelly Defendants"). This claim as to the Donnelly Defendants was dismissed by the District Court based on a prediction that the Vermont Supreme Court would recognize a material limitation to a claim for wrongful interference with custody (that it *per se* does not apply to a "guardian ad litem or an adverse expert witness") by relying on a single case from Virginia. The District Court also assumed that the Vermont Supreme Court would adopt Section 700 of the Restatement (Second) of Torts in defining the elements of a claim for wrongful interference with custody. But the District Court may not predict state law, and the Vermont Supreme Court is not bound by the Restatement (Second) of Torts. There was no basis for the District Court to predict Vermont law, or to assume that this limitation that applies in Virginia applies to Ms. Thayer's claim here.

- The District Court improperly granted summary judgment as to Grandparents' remaining due process and tort claims. The District Court granted summary judgment on Grandparents' due process and tort claims on the basis that DCF invited Ms. Thayer to seek a third Interstate Compact on the Placement of Children ("ICPC") but she failed to seek one. But the District Court found that DCF had not provided required notice to Grandparents of their rights, and it was DCF's obligation to conduct a third ICPC or take other action to place Sheera with Grandparents, which is overlooked by the District Court.

- The District Court improperly applied the *Younger* doctrine in finding that Ms. Thayer was not permitted leave to amend to bring a claim under the Indian Child Welfare Act ("ICWA"). The District Court impermissibly assumed a fact presented by the DCF Defendants at the pleading stage, rather than taking Ms. Thayer's allegations as true. In doing so, the District Court found that the state court proceeding was "ongoing" but failed to explain how *Rooker-Feldman* could apply (although it cannot apply when there is an ongoing proceeding) and yet *Younger* also applies (which is only applicable if there is an ongoing proceeding).

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over this matter pursuant to 28 U.S.C.

§ 1331. This Court has jurisdiction over this appeal pursuant to 28 U.S.C.

4

§ 1291.  The District Court entered final judgment on January 23, 2024.  App. 296.

Plaintiffs-Appellants timely filed their Notice of Appeal on February 22, 2024.

App. 267.

## STATEMENT OF THE ISSUES

1. Whether the District Court erred in holding that the *Rooker-Feldman* doctrine applied to Ms. Thayer's claims as to the DCF Defendants.[3]

   This question should be answered in the affirmative.

2. Whether the District Court erred in denying leave to file a Second Amended Complaint as to the proposed Count IX (intentional infliction of emotional distress), Count X (loss of consortium), and Count XI (civil conspiracy) under the *Rooker-Feldman* doctrine.

   This question should be answered in the affirmative.

3. Whether the District Court properly dismissed Ms. Thayer's ADA and Rehabilitation Act claims.

   This question should be answered in the affirmative.

4. Whether the District Court erred in dismissing Ms. Thayer's claim for wrongful interference with custody as to the Donnelly Defendants.

   This question should be answered in the affirmative.

5. Whether the District Court properly granted the DCF Defendants' Motion for Summary Judgment as to Elam Thayer's and Martha Thayer's 42 U.S.C. § 1983 claim and intentional infliction of emotional distress claim.

---

[3] Reference to "DCF Defendants" refers to Defendants-Appellees Laura Knowles, Karen Shea, Monica Brown, Christopher Conway, Jennifer Burkey, Kenneth Schatz, and DCF.

5

This question should be answered in the affirmative.

6. Whether the District Court erred in holding that the *Younger* doctrine barred Ms. Thayer's proposed claim under the ICWA.

This question should be answered in the affirmative.

## <u>STATEMENT OF THE CASE AND FACTS</u>

### A.    Course of Proceedings and Disposition Below.

This action was commenced by a Complaint dated November 27, 2019.  *See* App. 274.  Plaintiffs-Appellants' Motion for Leave to File Second Amended Complaint was filed on June 3, 2020.  App. 277.  DCF Defendants' Motion to Dismiss Count VIII of First Amended Complaint for Lack of Jurisdiction was filed on June 22, 2020.  App. 278.  DCF Defendants' Motion to Dismiss First Amended Complaint was filed on July 31, 2020.  App. 278.  Plaintiffs-Appellants' Motion for Leave to File Third Amended Complaint was filed on December 8, 2020.  App. 281. The District Court issued its Opinion and Order as to these various motions on December 14, 2021.  App. 1; App. 285.  The District Court granted leave in part for Plaintiffs to file a Second Amended Complaint, but dismissed Counts I-V and XII of the proposed Second Amended Complaint.  App. 72-73.  The District Court also dismissed Counts IX, X, and XI under the *Rooker-Feldman* doctrine and barred the joinder of additional defendants under the same doctrine.  App. 72. Additionally, the District Court held that Eleventh Amendment immunity bars all

6

claims by Elam Thayer and Martha Thayer for monetary damages against the State of Vermont and its officers in their official capacity and dismissed their claim for loss of consortium. *Id.* The District Court denied Plaintiffs' Motion for Leave to file a Third Amended Complaint. *Id.*

Plaintiffs-Appellants filed a Motion for Reconsideration of the Opinion and Order on December 28, 2021. App. 285. On May 24, 2022, the District Court issued an Order denying Plaintiffs' Motion for Reconsideration. App. 187.

On May 13, 2022, Lund filed a Motion for Judgment on the Pleadings. App. 288. On September 23, 2022, the District Court granted Lund's Motion to Dismiss for Lack of Jurisdiction and Motion for Judgment on the Pleadings and dismissed all claims against Lund. App. 290. On September 30, 2022, the Donnelly Defendants filed a Motion for Judgment on the Pleadings. App. 290. On February 16, 2023, the District Court granted the Donnelly Defendants' Motion for Judgment on the Pleadings and dismissed the remaining claims against the Donnelly Defendants with prejudice. App. 217.

After discovery the DCF Defendants filed a Motion for Summary Judgment on July 7, 2023. App. 292. On January 19, 2024, the District Court granted the Motion for Summary Judgment. App. 243. On January 23, 2024, the District Court issued a Judgment in favor of DCF Defendants. App. 296. This appeal followed.

7

**B.     Nature of the Case.[4]**

In October 2015, DCF sought and obtained an after-hours and *ex parte* Emergency Care Order to take custody of Ms. Thayer's three children based on a report.  App. 121 ¶ 67.  The October 2015 Emergency Care Order was followed by a Child in Need of Services ("CHINS") petition the next day.  Ms. Thayer's youngest child, Jesse, was never determined to be unmanageable, yet was also taken from Ms. Thayer and kept in foster care as well.  App. 127 ¶ 88.  The initial allegations of abuse and neglect were false and in November 2015, one of Ms. Thayer's children told DCF that the information was false.  App. 121 ¶ 67; App. 122 ¶ 70.  DCF knew that the original allegations were false and unprovable, so it settled on a new, unpleaded theory that Ms. Thayer's two oldest children were "unmanageable," pursuant to subpart "C" of the Vermont CHINS statute.[5]  App. 126 ¶ 86.  That theory was never proven, and there were never any allegations of actual abuse proven.

---

[4] The facts presented here are largely taken from the Complaint, along with other components of the record.  As this appeal primarily concerns a dismissal of Ms. Thayer's claims at the pleading stage, these allegations have not been disputed. Where the facts relating to Grandparents have been disputed, they have been noted as facts established at summary judgment.

[5] These facts were objected to on summary judgment, but Ms. Thayer has pleaded them and they must be accepted as true for purposes of her claims, which were dismissed at the pleading stage.

Ms. Thayer made extensive efforts to provide care for her children, including attending therapy sessions for unspecified "concerns." App. 129 ¶ 97. In November 2015, DCF also praised Ms. Thayer, testifying that "[Ms. Thayer] has been absolutely phenomenal in wanting to engage with us more recently, and DCF is incredibly impressed by the steps that she's taken already, in the short amount of time . . . ." Nevertheless, DCF moved forward with separating Ms. Thayer's family on the basis of an alleged risk of physical harm that DCF knew to be untrue.

The services provided to Ms. Thayer were largely therapy or counseling to condition her to accept the role of DCF and the third-party service providers that DCF appointed as necessary interventions into her life and family. App. 162 ¶ 190; App. 148 ¶ 151. Meanwhile, Ms. Thayer was forced to seek her own housing and transportation to comply with conditions imposed on her by Defendants-Appellants in order to secure the return of her children, some of which were impossible because they required travel when Ms. Thayer had no reliable means of transportation (they had located her children an hour away from the affordable housing that she could obtain). App. 148 ¶ 153; App. 155 ¶ 170. Defendants-Appellants then used Ms. Thayer's inability to comply to show that this somehow warranted removal of her children.

9

For example, in February 2016, Ms. Thayer's two youngest children were returned to her, subject to several conditions, including that she obtain housing and that she not allow the children to have any contact with their father. App. 127 ¶ 89. Ms. Thayer obtained a placement at a local hotel through the Homeless Prevention Center but that placement inexplicably ended in March 2016, when the average low temperature in the area was between 19°F and 31°F. *Id*. ¶ 91. Out of necessity, Ms. Thayer and her two youngest children moved back in with the children's father, Joel Winthrop, Sr., for a few nights, which violated the conditional custody order. *Id*. Since that time, DCF has retained custody of Ms. Thayer's two youngest children, and has failed to provide any support to Ms. Thayer, despite her disability factors. App. 129 ¶ 98.

Meanwhile, DCF was apparently embarked on a plan to have Ms. Thayer's children adopted. In 2017 and 2018, after having been told by DCF that Ms. Thayer was failing to "improve" on her unspecified "issues," and after DCF failed to expend any meaningful efforts or accommodations, Ms. Thayer was provided with legal counsel by the State. App. 142 ¶ 139. By 2018, DCF was determined to make a "permanency" determination and sever Ms. Thayer's parental rights for good, despite the fact that the DCF Case Plans made clear that Ms. Thayer was never unfit, had never abused her children, and she and her children had recognized disabilities warranting accommodations and services. App. 157 ¶ 175.

10

Ms. Thayer's counsel, who had no meaningful experience actually defending parents in termination proceedings, informed Ms. Thayer that there was "no hope of overcoming the termination of her parental rights" and that the only hope of having contact with her children was to "voluntarily agree" to a termination of her parental rights. App. 163 ¶ 195. Ms. Thayer, who was desperate to continue to be the best mother she could be, wrote to the Vermont Family Court in July 2018 that her appointed attorney had failed her, and that she was "not being fairly represented." *Id*. ¶ 193. When the judge set a hearing on the attorney's withdrawal, Ms. Thayer's attorney told her not to attend and that she would have new counsel. But the judge then required her attorney to continue representing Ms. Thayer. Ms. Thayer's counsel then told her to sign a "voluntary relinquishment." *Id*. ¶ 195. This followed years of conditioning by DCF to accept without question the "recommendations" that DCF and its service providers made to Ms. Thayer. Ms. Thayer was continuously told to accept what Defendants-Appellants were telling her, what the "experts" were telling her, and what her attorney was telling her, otherwise would be perceived as being "hostile."

Ms. Thayer's relinquishment of her parental rights was not voluntary, knowing, or intelligent, and was made based on the advice and insistence of counsel whose representation Ms. Thayer had requested be terminated. App. 164 ¶ 197. While the court in the CHINS proceeding asked Ms. Thayer whether the

11

termination of her parental rights was voluntary, and informed her of certain rights, this failed to take into account Ms. Thayer's allegations that she was being *told* that this was the *only* option even to see her children, despite there not even being alleged abuse because her children were taken from her on the theory they were "unmanageable." Ms. Thayer's supposedly "voluntary" relinquishment is a product of DCF's years of conditioning and Ms. Thayer's counsel's unwillingness or inability to defend her on the merits, in the context of a system that terminates parental rights, without constitutional compliance, as a routine matter.

## SUMMARY OF ARGUMENT

Please refer to the summary of the argument on pages 3 and 4, incorporated by reference here.

## STANDARD OF REVIEW

The District Court's determination that *Rooker-Feldman* applies is reviewed *de novo*. *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 83 (2d Cir. 2005). This Court has "an independent obligation to consider the presence or absence of subject matter jurisdiction sua sponte." *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006).

The District Court's determination that *Younger* requires abstention is reviewed *de novo*. *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 197-98 (2d Cir. 2002). Moreover, this Court "generally review[s] the denial of leave to

12

amend for abuse of discretion, but where the determination is based upon a legal interpretation, de novo review is appropriate." *WGH Commc'ns, Inc. v. Penachio Malara LLP*, No. 21-570-CV, 2022 WL 569665, at *1 (2d Cir. Feb. 25, 2022).

The District Court's dismissal of the Plaintiff-Appellant Keziah Thayer's Americans with Disabilities Act and Rehabilitation Act claims is reviewed *de novo*. *Faulkner v. Beer*, 463 F.3d 130, 133 (2d Cir. 2006).

The District Court's grant of summary judgment is reviewed *de novo*. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000).

## ARGUMENT

## I. THE DISTRICT COURT ERRED IN APPLYING *ROOKER-FELDMAN*.

The *Rooker-Feldman* doctrine prevents district courts from exercising jurisdiction over claims only in "limited circumstances." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005). *Rooker-Feldman* is a "narrow" and "limited" doctrine preventing a party who lost in state court from appealing directly to a federal district court. *Id.* 544 U.S. at 284. There was no appeal from state to federal court here. There are four requirements for the application of the *Rooker-Feldman* doctrine: "(1) the federal-court plaintiff must have lost in state court, (2) the plaintiff must complain of injuries caused by a state-court judgment, (3) the plaintiff must invite district court review and rejection of that judgment, and (4) the state-court judgment must have been rendered before

13

the district court proceedings commenced, *i.e.*, *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005). Each of the four factors must be met for *Rooker-Feldman* to bar a claim. *See Sung Cho v. City of New York*, 910 F.3d 639, 646 (2d Cir. 2018). The second and third elements are not met here.

### A. Ms. Thayer's Claims Were Not Caused by Orders of the Lower Court.

The Supreme Court has held that *Rooker-Feldman* does not apply unless a plaintiff complains about an injury "caused by" a state court judgment. *Exxon Mobil Corp.*, 544 U.S. at 284. Injuries are "caused by" a state court judgment if a plaintiff asserts a "violation of his rights that turn[s] on the correctness of a state-court judgment," or a claim that could not exist "had there been no state-court judgment." *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1145 (10th Cir. 2006); *In re Lampe*, 665 F.3d 506, 518 n.15 (3d Cir. 2011).

Ms. Thayer has pleaded independent claims that were not "caused" by orders of the lower court, and it is of no moment that success on Ms. Thayer's claims may have the effect of denying a legal conclusion reached by the lower court. *Mortimer v. Wilson*, No. 15 CIV. 7186 (KPF), 2020 WL 3791892, at *19 (S.D.N.Y. July 7, 2020) (holding that "the *Rooker-Feldman* doctrine does not

14

apply where a plaintiff brings an independent claim that was not caused by a state court judgment, *even if that claim would deny a legal conclusion that a state court has reached in a case to which he was a party*") (emphasis added); *see also Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427-28 (2d Cir. 2014) (acknowledging that a complaint can allege an injury caused by a fraudulent statement made to a court, which statement resulted in an allegedly inaccurate state court judgment, without alleging that the injury was *caused* by the inaccurate state court judgment such that it would be barred by the *Rooker-Feldman* doctrine). Ms. Thayer seeks to establish that she suffered constitutional violations by: (i) Defendants-Appellees' initial investigation based on inadequate procedures; (ii) Defendants-Appellees' removal of Ms. Thayer's children from her custody without complying with due process, prior to any investigation; and (iii) Defendants-Appellees' coercing Ms. Thayer to enter into an unenforceable "voluntary relinquishment."[6] App. 180-181 ¶¶ 250-253. For example, much of Ms. Thayer's claims under 42 U.S.C. § 1983 (Counts I, II, VII) concerns the lack of due process

_____

[6] As described in the Second Amended Complaint, to be voluntary, a waiver must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *United States v. Rom*, No. 2:10-CR-146, 2011 WL 5239224, at *3 (D. Vt. Nov. 1, 2011) (citing *United States v. Morgan*, 51 F.3d 1105, 1110 (2d Cir.), *cert. denied*, 116 S. Ct. 171 (1995)). Here, the agreement was the product of coercion because Ms. Thayer was threatened that she would never she her children again if she did not sign the "voluntary" termination. App. 154 ¶ 168.

15

that she was afforded by DCF.  In addition, her claim in Count III is for violation of her right to bodily autonomy for being forced to accept unwanted medical treatment as a condition of her attempt to maintain a relationship with her children. Count IV and V are claims against DCF for violation of the ADA and Rehabilitation Act for its failure to accommodate her disabilities during the lower court proceeding, before any judgment.  None of these examples include any review or rejection of the lower court's decisions.  Instead, they are independent claims that negate any application of *Rooker-Feldman*.  The lower court simply never found that the federal constitutional standard for destroying a family was met.  It only found that Ms. Thayer's children were "unmanageable" pursuant to subpart "C" of the Vermont CHINS statute, after switching the CHINS petition from one claiming parental abuse to a CHINS "C" petition.  App. 160 ¶ 186.  In dismissing Ms. Thayer's claims on the basis of *Rooker-Feldman*, the District Court did not properly analyze whether Ms. Thayer's injuries were caused by a state court judgment.

The District Court found this prong of the *Rooker-Feldman* test satisfied by a less demanding form of causality —*i.e.*, that Plaintiff's injuries **arise from** the lower court decision terminating Ms. Thayer's parental rights.  App. 1 ("Plaintiff's claims arise from her assertion that she 'has had her children taken from her unlawfully and removed from her life…").  This is the wrong test.  "[W]hether an

16

injury was legally *caused by* a party's actions is a much more demanding question than whether the injury *arose out of* those actions." *Wausau Underwriters Ins. Co. v. Old Republic Gen. Ins. Co*., 122 F. Supp. 3d 44, 52 (S.D.N.Y. 2015) (emphasis added). In other words, "arise[s] from" refers to "part of the causal link leading to the injury," whereas "caused by" is akin to proximate cause. *See In re Lehman Bros. Holdings Inc*., 855 F.3d 459, 478 (2d Cir. 2017); *Burlington Ins. Co. v. NYC Transit Auth*., 29 N.Y.3d 313, 324 (N.Y. 2017). Notably, even if the state court judgments were magically reversed, Ms. Thayer would be pressing every one of her claims that have been treated in the decision as barred by *Rooker-Feldman*.

At most, the lower court judgment merely "ratifie[d]" or "acquiesce[d] in" the DCF Defendants' misconduct. *Hoblock*, 422 F.3d at 88; *see also Dorce v. City of New York*, 2 F.4th 82, 104 (2d Cir. 2021) ("Our court has further determined that *Rooker-Feldman* does not bar claims based on an opponent's misconduct that *precedes* the state court proceeding, if the 'plaintiffs' alleged injuries were merely *ratified* by the state-court judgments rather than *caused* by them.") (citation omitted); *Almazo*, 2020 WL 1151313, at *1 (finding that claims were not barred by *Rooker-Feldman* where they alleged injuries caused by defendant's pre-judgment actions); *Reliability Inc. v. Doki*, No. 20 CIV. 7109 (KPF), 2021 WL 3408589, at *8 (S.D.N.Y. Aug. 4, 2021) ("[a]s Reliability's injuries from this alleged conduct 'existed *prior* in time to the state-court proceedings, and so could

17

not have been 'caused by' those proceedings,' the second element required for the application of the *Rooker-Feldman* doctrine is not present here."). Here, there was preceding, concurrent, and later misconduct that may have been ratified at times, but was parallel and wrongful.

The District Court conflated the *form of relief* that Ms. Thayer seeks with the *injuries* that she alleges. Ms. Thayer seeks the same form of relief (money damages) as a result of multiple, different independent injuries, some of which predate the lower court judgment and others post-date it. For example, Ms. Thayer was injured when the DCF Defendants violated her right to refuse unwanted medical treatment as a condition of her attempt to maintain a relationship with her children. This happened *before*, and independent of, any state court decision (as did the other violations of Ms. Thayer's rights discussed above). *See Adkins v. Rumsfeld*, 464 F.3d 456, 463–464 (4th Cir. 2006) ("[T]he test is not whether the relief sought … 'would certainly upset' the enforcement of a state court decree.").

The District Court cited to *Charles v. Levitt*, 716 F. App'x 18, 21 (2d Cir. 2017), for the proposition that the District Court "must scrutinize the injury of which a plaintiff complains as a necessary step toward determining whether the suit impermissibly seeks review and rejection of a state court judgment. . . " *Id.*, 716 F. App'x at 21. But the cite skips the rest of that sentence, which provides that the District Court must also scrutinize whether the complaint seeks "some other

18

remedy" that is permissible. *Id.* By reviewing only the injury that Ms. Thayer pleaded and conflating such injury with the form of relief requested, the District Court overlooked that Ms. Thayer may bring independent claims for damages, even *if* her claim for injunctive and declaratory relief is deemed blocked by *Rooker-Feldman*.

**B.    Ms. Thayer Does Not Seek to Overturn the State Court Judgment.**

Just as how Ms. Thayer's claims were not "caused by" the lower court's judgment, her claims do not seek to overturn that judgment. In *Mortimer*, the Southern District of New York declined to apply *Rooker-Feldman* in a case for damages similar to the one here arising out of the removal of plaintiff's son by a state court order where the plaintiff alleged that the defendants had violated her constitutional rights, and that the outcome of the violation was the removal of her son pursuant to a Temporary Removal Order. 2020 WL 3791892, at *19. The court held that only the fourth *Rooker-Feldman* factor was met, the existence of a state court judgment rendered prior to the district court proceedings. The court found that the other factors were not met because: (i) it was unclear whether plaintiff was a "state court loser"; (ii) plaintiff brought a claim for damages on the theory that the outcome of the state court proceeding would have been different had she been afforded due process; and (iii) plaintiff did not ask the district court to

19

review and reject the Temporary Removal Order but instead to adjudicate due

process violations by defendants. *Id*.

As in *Mortimer*, Ms. Thayer's theory is that the outcome of the lower court

proceeding would have been different had she been afforded due process. Other

courts have also found that where the claims involve constitutional claims for

damages, they do not seek to overturn an order. In *Webb as next friend of K. S. v.*

*Smith*, the Eighth Circuit held:

> The plaintiffs here do not appear to be seeking to get out from under a
> state-court judgment; they are trying to obtain damages from state
> actors who allegedly violated their rights. In a similar case involving
> the application of *Rooker-Feldman* to a state court's *ex parte* order
> regarding emergency protective care of a minor, we noted that *Rooker-*
> *Feldman* did not apply because the plaintiffs 'do not seek to overturn
> the *ex parte* order by this action. Rather, they seek redress under 42
> U.S.C. § 1983 for an alleged unconstitutional seizure of' their child.

936 F.3d 808, 817 (8th Cir. 2019) (citation omitted); *Sykes v. Mel S. Harris &*

*Assocs. LLC*, 780 F.3d 70, 94-95 (2d Cir. 2015) (finding *Rooker-Feldman* doctrine

inapplicable to claims because they "speak not to the propriety of the state court

judgments, but to the . . . course of conduct that defendants pursued in obtaining

such judgments").[7] This is precisely the gravamen of Ms. Thayer's claims here.

---

[7] In a Third Circuit Section 1983 case, fathers of minor children brought actions
seeking declaratory and injunctive relief against various defendants, including state

20

The District Court's decisions imply that there can never be a District Court case arising from due process violations during a state court proceeding. This is not so. *Conway v. Searles*, 954 F. Supp. 756, 767 (D. Vt. 1997) (describing that the Due Process Clause of the United States Constitution is "invoked to protect[ ] the individual citizen from state action that is wholly arbitrary or irrational."). This would mean that cases such as *Santosky v. Kramer*, 455 U.S. 745 (1982), *Quillion v. Walcott*, 98 S. Ct. 549 (1978), and *Stanley v. Illinois*, 402 U.S. 645 (1972), which arose out of due process violations during court proceedings, could never

---

court judges, alleging that custody standards violated the Fourteenth Amendment. Finding *Rooker-Feldman* inapplicable, although ultimately ruling for the defendants on wholly other grounds, the Third Circuit pointed out that the plaintiffs did not challenge state court judgments but the underlying policy that governed them, namely, allegedly stripping parents of custody in favor of other parents without a plenary hearing and using an improper best-interests-of-the-child standard. *See Allen v. DeBello*, 861 F.3d 433, 437 (3d Cir. 2017); *see also B.S. v. Somerset County*, 704 F.3d 250 (3d Cir. 2013) (allowing a mother to bring claims for damages related to alleged substantive and procedural due-process violations that occurred during the state court proceeding in which her children were removed and holding that "because the injury Mother claims is likewise traceable to Appellees' actions, as opposed to the state court orders those actions allegedly caused, we reject Appellees' contention that the *Rooker-Feldman* doctrine precludes federal jurisdiction in this case.").

21

have been brought in federal court.  A federal court is the quintessential forum for adjudication of federal constitutional claims.[8]

## C.  The Issues Raised by Ms. Thayer Were Never Addressed by the Lower Court.

This independent review is necessary to determine whether certain claims may be outside the scope of *Rooker-Feldman* because they were never addressed in the underlying proceeding.  *See, e.g.*, *W.J.F. Realty Corp. v. Town of Southampton*, 220 F. Supp. 2d 140, 150 (E.D.N.Y. 2002) (noting that the doctrine does not bar review of claims not considered in state court); *Patane v. Nestle Waters N. Am., Inc.*, 314 F. Supp. 3d 375, 381 (D. Conn. 2018) ("The *Rooker–Feldman* doctrine does not apply merely because there has been a prior state court action [that] . . . has not foreclosed a defendant from *continuing to engage* in the conduct that forms the basis for a later federal action.") (emphasis added).  Even if certain issues in this case are the "same" or "relate to" a state court proceeding, the Supreme Court has held that "[i]t is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court." *Skinner v. Switzer*, 131 S. Ct. 1289, 1297 (2011).

---

[8] The Vermont Supreme Court has recognized that when the State violates federal law in regard to a termination of parental rights that violates federal law, a suit for monetary damages is available.  *In re B.S.*, 166 Vt. 345, 354 (1997).

22

The decision in *In re Philadelphia Entertainment & Development Partners* is illustrative. 879 F.3d 492 (3d Cir. 2018). In *Philadelphia Entertainment*, a gambling operator had its license revocation affirmed in state court. *Id*. at 495-96. The gambling operator then sued in federal court seeking to recover $50 million in gaming license fees. *Id*. at 496. Even though the issue of whether the state should return the licensing fee was clearly related to whether the state was entitled to revoke the license, the Third Circuit concluded that the case was not barred by *Rooker-Feldman* because the plaintiff did not ask the court to perform an appellate review of the revocation order. *Id*. at 501-02. The same is true here. Even if Ms. Thayer's claims for money damages based on the DCF Defendants' constitutional violations *relate* to the state court proceeding, Ms. Thayer did not ask the District Court for an appellate review of the termination of Ms. Thayer's parental rights.

### D.    The Fraud Exception Applies.

The District Court rejected that if the lower court judgment was obtained by fraud, Ms. Thayer may seek review of the DCF Defendants' fraudulent action. App. 38.

The *Great W. Mining & Min. Co. v. Fox Rothschild LLP* court acknowledged that application of the test becomes more "complicated" when the plaintiff complains of an injury that is "related" in some fashion to the state court proceeding. 615 F.3d 159, 163 (3d Cir. 2010). How ever, it is possible to

23

distinguish claims related to prior state court judgments that are barred by the *Rooker-Feldman* doctrine from those that are not. For example, a claim that a judgment was procured by fraud is independent of the judgment and therefore, does not fall within the *Rooker-Feldman* doctrine, while a claim that the judgment itself is illegal does. *Id.*

Persuasive, recent cases have specifically allowed claims based on representations made to the underlying court in similar circumstances. In *Guest v. Allegheny Cty.*, the Western District of Pennsylvania held that plaintiffs could assert claims and seek damages that they alleged derived from defendants' actions in the state court proceeding. No. CV 20-130, 2020 WL 4041550, at *5 (W.D. Pa. July 17, 2020). Specifically, plaintiffs were permitted to bring claims concerning the representations by a caseworker to the court which resulted in the issuance of a Emergency Custody Authorization and the removal of plaintiffs' children. *Id.*

In *Nesses v. Shepard*, the Seventh Circuit found that *Rooker-Feldman* does not apply when parties conspire with judges to rig a court system. 68 F.3d 1003, 1005 (7th Cir. 1995). Judge Posner wrote that the plaintiff could challenge the defendants' actions outside the proceedings "without being blocked by the *Rooker-Feldman* doctrine" and that he could sue to show that the defendants' actions "caused the decision to be adverse to him and thus did him harm." *Id.* That case reasoned that to hold otherwise would block a federal remedy for violating federal

24

rights when defendants succeeded in corrupting a state judicial process. This is the rub here. *Id*.; *Loubser v. Thacker*, 440 F.3d 439, 441 (7th Cir. 2006) ("The claim that a defendant in a civil rights suit 'so far succeeded in corrupting the state judicial process as to obtain a favorable judgment' is not barred by the *Rooker-Feldman* doctrine."). Courts in the Second Circuit have held similarly. *See Limtung v. Thomas*, No. 19CV3646RPKMMH, 2021 WL 4443710, at *5 (E.D.N.Y. Sept. 28, 2021) ("the second and third *Rooker-Feldman* requirements are not met when a plaintiff alleges that fraud occurred during a foreclosure proceeding and seeks damages for his injuries. . . . In other words, a plaintiff may 'seek damages for injuries caused by a defendant's misconduct in procuring a state court judgment, but not for injuries directly caused by that judgment.'") (citing *Dorce*, 2 F. 4th 82 at 104).

Here, the Order held that a remedy for intrinsic fraud must be sought in the underlying proceeding. App. 39. The District Court cited only one case for this proposition, *In re Buckskin Realty Inc.,* which held that New York law "permits collateral attacks on judgments obtained by extrinsic, as opposed to intrinsic, fraud." No. 1-13-40083-nhl, 2016 WL 5360750, at *6 (Bankr. E.D.N.Y. Sept. 23, 2016). However, even that case expressly holds that the "*Rooker-Feldman* doctrine does not prevent the collateral attack on a state court judgment which is alleged to have been procured through fraud, if the claim now asserted is

independent from the claim that the state court judgment was erroneous." *Id.* at 29. The conclusion that fraud in the underlying proceeding may not be addressed by federal courts is misplaced. It is clear from *Limtung v. Thomas* and *In re Buckskin Realty Inc.* that federal courts may address fraud in the underlying proceeding, if it is addressed in an independent claim.

Had the District Court accepted all allegations and drawn all reasonable inferences in favor of Ms. Thayer, as it must, per *Beam v. Bellows Falls Vermont Vill. Corp.*, No. 2:20-CV-46, 2021 WL 1118061, at *2 (D. Vt. Mar. 24, 2021), the District Court would have held that several of Ms. Thayer's claims survive, including:

- Counts I and II: Due Process Violations: In these claims, Ms. Thayer alleges that the Due Process Clauses of the Vermont and United States Constitutions are implicated by Defendant-Appellants' decisions and actions related to Ms. Thayer's custody of her children and her rights to familial association, bodily integrity and privacy, including: (i) conducting an initial investigation using inadequate procedures; (ii) removing Ms. Thayer's children from her home and custody without using any procedure that complies with due process, prior to any investigation; and (iii) forcing Ms. Thayer to enter into an unenforceable 'voluntary relinquishment.'" App. 180 ¶ 250; App. 184 ¶ 267. Ms. Thayer is not challenging the state court judgments, but the underlying conduct, practices, and policies, that governed those judgments. This is expressly permitted under *Rooker-Feldman*.

- Count III: Violation of Liberty and Autonomy in the Right to Refuse Unwanted Medical Treatment: This claim alleges that Defendants Burkey, Knowles, Conway, Brown, Pell, and Kaminski "erroneously, and in violation of established laws, rules, and written policies, determined that Ms. Thayer had behavioral problems and metal healthcare issues that required

treatment in the form of 'services.'" App. 189 ¶ 288. These Defendants-Appellees removed Ms. Thayer's children and demanded that Ms. Thayer obtain treatment. After admitting that no abuse had occurred, these Defendants-Appellees continued to require Ms. Thayer to receive "treatment." This claim is independent of any state court order, and pre-dates the lower court judgment. As described above, action that pre-dates a state court judgment is actionable. *See, e.g.*, *Almazon v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 19-CV-4871 (VEC), 2020 WL 1151313, at *1 (S.D.N.Y. Mar. 9, 2020), *appeal dismissed* (Aug. 4, 2020); *Reliability Inc.*, 2021 WL 3408589, at *8. Accordingly, this claim for damages is outside the scope of *Rooker-Feldman*.

- Count IX: Intentional Infliction of Emotional Distress: This claim alleges that some Defendants-Appellants took affirmative acts to prevent Ms. Thayer from having contact with her children. App. 203 ¶ 363. Ms. Thayer further alleges that "[s]uch lack of contact at the instigation and efforts of the [Defendants-Appellees] comprises a willful disregard of [Ms. Thayer's] Constitutional rights, and serves to create severe emotional distress to [Plaintiffs-Appellants] because of not having any contact whatsoever with their biological kin." *Id*. at 367. This conduct is directly related to the Defendants-Appellees' actions that occurred during the course of the state court proceeding and in the necessary sense not "caused by" any state court order. Instead, Ms. Thayer has alleged that the Defendants-Appellants actively prevented Ms. Thayer from seeing her children despite no court order allowing such separation. This claim too precedes any state court judgment and thus does not fall within *Rooker-Feldman's* narrow reach.

- Count XI: Civil Conspiracy: This claim alleges that the Liability Defendants acted in concert with the Donnelly Defendants to deprive Ms. Thayer of her rights to substantive and procedural due process. Courts have held that claims for civil conspiracy that seek damages do not require a ruling that the underlying judgment was improper, and are therefore not barred by *Rooker-Feldman*. *See, e.g.*, *Pennicott v. JPMorgan Chase Bank*, N.A., No. 16 CV 3044 (VB), 2018 WL 1891312, at *4 (S.D.N.Y. Apr. 18, 2018). Here, Ms. Thayer seeks damages arising out of the Defendants-Appellees' conspiracy with the Donnelly Defendants. These damages do not in any way rely on any state court order, and could be awarded regardless of whether a judgment even existed.

27

## II.   THE DISTRICT COURT ERRED IN DISMISSING MS. THAYER'S ADA AND REHABILITATION ACT CLAIM.

The District Court dismissed Ms. Thayer's ADA and Rehabilitation Act Claims (Counts IV and V of the SAC) against DCF on the supposed basis of the *Rooker-Feldman* doctrine.  But Ms. Thayer's ADA and Rehabilitation Act claims are not even mentioned in the District Court's analysis.  Only in the District Court's conclusion is the dismissal of Ms. Thayer's ADA and Rehabilitation Act claims even mentioned.  App. 72.  The absence of any analysis as to Ms. Thayer's ADA and Rehabilitation claims require vacatur and remand.   *Gifford v. United N. Mortg. Bankers, Ltd*., No. 18CIV6324PAEHBP, 2019 WL 2912489, at *6 (S.D.N.Y. July 8, 2019) (stating that "an individual analysis of each of plaintiff's proposed claims is required to determine whether plaintiff alleges injuries caused by the state court judgment and whether adjudication of plaintiff's claims would invite a review and rejection of that judgment.").

## III.   THE DISTRICT COURT ERRED IN DISMISSING MS. THAYER'S CLAIM FOR WRONGFUL INTERFERENCE WITH CUSTODY AS TO THE DONNELLY DEFENDANTS.

The District Court dismissed Ms. Thayer's claim for wrongful interference with custody as to the Donnelly Defendants stating that "[t]he Donnelly Defendants are entitled to judgment on the pleadings as to Count VI because Ms. Thayer has not alleged a plausible claim under § 700 of the Restatement (Second)

28

of Torts. (See id. at 8-l l.)  Ms. Thayer's unlawful-interference-with-custody claim is based on her allegation that the Donnelly Defendants produced a false and misleading clinical report about her fitness as a parent.  Such allegations cannot support a § 700 claim."  App. 220.  The sole support for the District Court's decision was a single case from Virginia where the Supreme Court of Virginia held that a claim for wrongful interference with custody could not be maintained against a "guardian ad litem or an adverse expert witness" in a custody or visitation proceeding.  *Id*. (citing *Padula-Wilson v. Landry*, 298 Va. 565, 579, 841 S.E.2d 864, 871 (2020)).  But the Vermont Supreme Court has never adopted Section 700 of the Restatement (Second) of Torts to define the elements of this cause of action, and the District Court has acknowledged (in a case subsequently affirmed by this Court) that it has no obligation to do so.  *See Schuppin v. Unification Church*, 435 F. Supp. 603, 609 (D. Vt.), *aff'd*, 573 F.2d 1295 (2d Cir. 1977).  The District Court cited *Padula-Wilson* as "as persuasive authority to predict Vermont law in this case" without citing its authority to predict Vermont law that has not been adopted. Essentially the District Court not only impermissibly predicted law, and then relied on its own prediction as if it were the law, but it did so by selecting a single case from another state to support its prediction, which is highly speculative.  This creation of authority where none exists is not a fair or proper method of deciding cases.

29

While a District Court is permitted to make an "*Erie*-prediction" such predictions only apply in diversity cases, which this is not. Moreover, while *Pullman* does not apply because there is no resolution of any federal question as to this cause of action, the underlying theory of *Pullman* abstention, to ensure "that federal courts avoid a decision that guesses at what a state court will do in the future, since a federal court's rough forecast may later be displaced by an authoritative state adjudication" is relevant. *Leslie v. City of New York*, No. 22 CIV. 2305 (NRB), 2023 WL 2612688, at *10 (S.D.N.Y. Mar. 23, 2023). The District Court should not have predicted that the Vermont Supreme Court would apply a narrow interpretation of Section 700 and avoid making those who present false reports of abuse to a court not liable, let alone assume the Vermont Supreme Court would adopt Section 700 at all (and then go on to elect just one other state's law).

## IV. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT AS TO THE GRANDPARENTS' CLAIMS.

### A. The District Court Erred in Finding that No Due Process Violation Occurred.

In its Order granting the DCF Defendants summary judgment, the District Court found that "[t]he evidence does not indicate that DCF opposed a third ICPC process for Sheera's placement with Grandparents; instead, DCF invited Ms. Thayer to ask New York to send its paperwork to Vermont so that Vermont could

30

initiate a third ICPC process. (See Doc. 53-29 at 4.) Nothing about that conduct supports a due process claim against DCF." App. 263-264. The single document cited by the District Court in coming to a conclusion (which resulted in finding no due process violation occurred) was one filed with DCF Defendants' Motion to Dismiss, not their Motion for Summary Judgment, but, in any event, states "[Ms. Thayer] contacted DCF stating that NY has now approved [Martha Thayer's] ICPC and requested that VT DCF contact NY DCF. This worker has explained to [Ms. Thayer] several times this is not how the ICPC works, it needs to go through the proper process. It is unclear how the process was restarted as Vermont did not initiate another request, we have invited [Ms. Thayer] to have NY DCF send Vermont DCF the approved paperwork." App. 224.[9] But this fact relied on by the District Court does not establish that DCF did not oppose a third ICPC, and says *nothing* about a third ICPC. And DCF did not simply fail to "remind[ ] Grandparents of the need to produce the paperwork." App. 262. If Vermont needed further information, it was *its* obligation (consistent with its Policy 91 and federal law to take efforts to place the children with their family, versus strangers) to obtain that information, and it had an obligation to take action to make sure this

_____

[9] A redacted version of this document is included in the record, as the original was filed with the District Court under seal.

was done.  App. 225 (requiring DCF to identify family members of children and stating that DCF is "*required* to assess the suitability of the person to care for the child.") (emphasis added).  The District Court somehow found it was *Ms. Thayer's* obligation to do the work of another ICPC, finding "Plaintiffs assert that '[t]here was no basis not to do an ICPC' (Doc.239-2137) but have not introduced any evidence that Keziah Thayer requested that New York DCF send the paperwork to Vermont DCF or that any further ICPC was completed for Sheera."  This also ignores that Defendant Brown testified that when she told Ms. Thayer that placement could not happen given the prior denial Defendant Brown testified that this was not based on ICPC rules but instead on her "office" and conversation "with our supervisor" Defendant Knowles.  Defendant Kaminski also testified that it was up to Defendant Kaminski and her supervisor (Defendant Knowles) whether a new ICPC was to be issued.  In other words, there was no agreement by DCF to do another ICPC, but it was DCF's obligation to do one in any event.

The District Court also failed to consider that the notice required to be provided under federal law (which the District Court found was not provided) is required to "[e]xplain the options relatives have under federal, state, or tribal laws to participate in the care and placement of the child, including any options that may be lost by failing to respond to the notice."  App. 260 ("DCF has not shown that all of the notice requirements listed in Policy 91 were satisfied.").  In other words,

32

DCF never gave Grandparents notice of their right to seek an ICPC, failed to make any effort to do one (despite knowing the conviction paperwork was with New York Social Services), but then blamed Grandparents (and Ms. Thayer) for supposedly not requesting an ICPC, even though Ms. Kaminski's letter of February 3, 2016, stated that she spoke to "the family" about the request and that Sheera "has a positive relationship with her grandmother who would like to care for her." App. 248. The District Court erred in finding that there was no due process violation in light of these facts.

### B. The District Court Erred in Dismissing Grandparents' IIED Claim.

The District Court concluded that "the evidence shows that DCF invited Ms. Thayer to submit paperwork documenting the old Colorado conviction and New York's approval so that Vermont could initiate a third ICPC for Sheera's placement with Grandparents" and therefore Grandparents could not prevail on their IIED claim. App. 265. But there is no evidence in the record that such paperwork was even required to initiate another ICPC, or that Vermont made any effort to obtain that paperwork, or that Vermont would even submit a third ICPC. Moreover, the District Court found that the required notice under DCF Policy 91 was never provided, and there is no obligation of a person seeking placement to

33

request an ICPC.  That is *DCF's* obligation.  The IIED claim was improperly dismissed.

## V.  THE DISTRICT COURT ERRED IN APPLYING *YOUNGER* TO MS. THAYER'S ICWA CLAIM AND REFUSING TO PERMIT LEAVE TO AMEND ON THIS BASIS.

This Court has held that "*Younger* abstention is appropriate when: 1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has an avenue open for review of constitutional claims in the state court." *Chandler v. Carroll*, No. 1:09-CV-58, 2009 WL 1181294, at *1 (D. Vt. Apr. 30, 2009) (citing *Hansel v. Town Court for Town of Springfield, N.Y.*, 56 F.3d 391, 393 (2d Cir. 1995)).  *Younger* is inapplicable here, but the District Court found that it was "potentially applicable" and denied Ms. Thayer's request for leave to amend on that basis.  The District Court found that because some of the adoption proceedings were "ongoing" for the purposes of *Younger*.  App. 69-71.  No basis for this conclusion is cited by the District Court (and the District Court assumed a fact claimed by the DCF Defendants, although such alleged facts should not have been considered at the pleading stage).  Nor did the District Court explain how *Rooker-Feldman* could apply (although it cannot apply when there is an ongoing proceeding) and yet *Younger* also applies (which is only applicable if there is an

34

ongoing proceeding).[10]  Because leave to amend must be "freely granted," the

District Court's finding that *Younger* was "potentially applicable" was an

insufficient basis to deny leave.  *See, e.g.*, *Macias v. Ocwen Loan Servicing, LLC*,

718 F. App'x 32, 37 (2d Cir. 2017) (remanding denial of a request for leave to

amend where the district court did not provide a reason for its denial and no

futility, bad faith, delay, or prejudice was "immediately obvious from the record.").

## <u>CONCLUSION</u>

For the reasons set forth above, the decisions of the District Court should be

reversed.

---

[10] In *Hunter v. MacMahon*, No. 21-1473 (2d Cir. July 21, 2023), the Second
Circuit held that the *Rooker-Feldman* doctrine does not extend to a federal lawsuit
challenging the effects of a state-court judgment when a state-court appeal from
that judgment remains pending.

Respectfully submitted,

**KEZIAH THAYER, ELAM THAYER, and MARTHA THAYER**

/s/ Colin R. Hagan
Colin R. Hagan
Shlansky Law Group, LLP
1 Winnisimmet Street
Chelsea, MA  02150
Phone: (617) 497-7200
Fax: (866) 257-9530
E-mail: Colin.Hagan@slglawfirm.com

Dated: June 5, 2024

36

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that, in compliance with F.R.A.P. 32(a)(7)(B), the within brief contains 8,746 words (as calculated using the word-counting feature of Microsoft Word) in 14 pt. proportional font, exclusive of tables and certifications.

By: <u>/s/ Colin R. Hagan</u>
Colin R. Hagan